UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANGEL R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-02331-TAB-JRS |
| | ) | |
| KILOLO KIJAKAZI Acting Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON PLAINTIFF'S
BRIEF IN SUPPORT OF APPEAL**

**I.     Introduction**

Plaintiff Angel R. appeals the Social Security Administration's denial of his application for disability insurance benefits.  Plaintiff argues that the Administrative Law Judge erred in calculating his residual functional capacity by relying on inconsistent and unsupported opinions from non-examining consultants and failed to adequately account for assessed moderate limitations to social interaction and concentration.  While Plaintiff raises some interesting and at times close questions, ultimately, the ALJ's decision is supported by substantial evidence and reflects appropriate consideration of all the issues at hand.  Therefore, Plaintiff's request for remand is denied.  [Filing No. 12.]

**II.     Background**

On May 15, 2018, Plaintiff filed a Title II application for supplemental security income, alleging disability beginning on May 9, 2018.  The SSA denied Plaintiff's claims initially and upon reconsideration.  Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 15, 2018, the application date.  At step two, the ALJ determined that Plaintiff had the following severe impairments: obesity; major depressive disorder; attention-deficit/hyperactivity disorder; anxiety; bipolar I disorder; and intellectual disorder.  [Filing No. 9-2, at ECF p. 18.]

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.  Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or his remaining ability to work despite his limitations.  The ALJ concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> [N]o ladders, ropes, or scaffolds.  He must avoid all use of hazardous moving machinery and exposure to unprotected heights.  No job where driving or operation of motorized vehicles or use of hazardous moving machinery is required to perform functions of the job.  No complex written or verbal communications or complex decision-making.  He is limited to simple, routine, repetitive tasks, that is, short-cycle work, where the same routine tasks are performed over and over again according to set procedures, sequence, or pace with little opportunity for diversion or interruption, such work having a short initial learning period of usually 30 days or less.  No tandem tasks or teamwork. No fast-paced or assembly line production requirements.  Occasional superficial interaction with the general public, coworkers, and supervisors.  No more than occasional routine workplace changes.  He can tolerate normal supervisory interactions as needed, including, for example, performance appraisals, corrections, instructions, and directives as necessary.  He can tolerate interactions to receive instructions as needed for task completion of simple, routine, repetitive

>work.  He can exercise judgment in making work-related decisions commensurate with simple, routine, repetitive work such as described.

[Filing No. 9-2, at ECF p. 22.]  At step four, the ALJ concluded that Plaintiff has no past relevant work.  The ALJ noted that on the date he filed his application, Plaintiff was 21 years old, a younger individual, with limited education.  Finally, at step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as custodian, laborer, and dishwasher.  [Filing No. 9-2, at ECF p. 25.]  Accordingly, the ALJ concluded that Plaintiff was not disabled.

### III.   Discussion

Plaintiff raises many concerns with the ALJ's decision, arguing that the ALJ: did not clearly articulate her weighing of the non-examining medical source opinions; did not explain why she departed from elements of the opinions that the found persuasive; did not acknowledge problems with the VE testimony at the hearing; and did not apply the moderate limitations to concentration and interaction in her final assessment of Plaintiff's RFC that she recognized elsewhere in her opinion.  [Filing No. 12, at ECF p. 13.]  Essentially, Plaintiff argues that the ALJ inappropriately relied on inconsistent and unsupported opinions from non-examining consultants and failed to adequately account for assessed moderate limitations to social interaction and concentration, which resulted in an RFC unsupported by substantial evidence.

The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence.  *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence."  (Internal quotation marks omitted)).  In addition, the Court reviews "to determine whether [the ALJ's decision] reflects an adequate logical bridge from the

evidence to the conclusions." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner. Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

### A.     Non-examining medical source opinions

Three non-examining medical source opinions are at issue in this case. The first is from the initial review, when Dr. Jean Germain concluded that Plaintiff would have moderate limitations to understanding and concentrating, but only mild limitations to interacting and adapting. [Filing No. 9-3, at ECF p. 7.] On reconsideration, Dr. Michele Chappuis concluded that Plaintiff had a moderate limitation to concentrating and only mild limitations to the other three functional areas. [Filing No. 9-3, at ECF p. 19.] As Plaintiff notes, both consultants rated Plaintiff as "markedly" limited in the checkbox findings as it related to his ability to carry out detailed instructions. Ultimately, however, both Dr. Germain and Dr. Chappuis concluded that Plaintiff was able to understand, remember, and carry out simple instructions, make simple decisions, concentrate for extended periods, interact with others, and respond to changes. [Filing No. 9-3, at ECF p. 10, 22.] The ALJ found these opinions somewhat persuasive and noted:

> They are somewhat consistent with, and supported by, the substantial evidence of record discussed in this decision, such as the generally largely negative findings at medical appointments and the claimant's presentation at the hearing (e.g., during the hearing, the claimant was able to provide information about his personal and medical histories and answer questions appropriately without any significant problems, did not engage in any significant unusual behaviors or inappropriate interactions and was polite when addressing me, and maintained his concentration fairly well), and the overall record supports some additional limitations.

[Filing No. 9-2, at ECF p. 24.]

4

Finally, at the supplemental hearing, Dr. James M. Brooks opined that Plaintiff had moderate limitations to all four functional areas, could perform unskilled work, and could have occasional contact with supervisors, coworkers, and the general public. [Filing No. 9-2, at ECF p. 44.] The ALJ found Dr. Brooks' opinion persuasive. The ALJ stated that Dr. Brooks' opinion was generally consistent with, and supported by, the substantial evidence of record, such as the generally largely negative findings at medical appointments, activities of daily living, and Plaintiff's presentation at the hearing. [Filing No. 9-2, at ECF p. 24.] The ALJ specifically referenced the fact that Plaintiff worked part time at a hot dog stand in 2020, and once again noted that Plaintiff answered questions appropriately during the hearing without any significant problems. [Filing No. 9-2, at ECF p. 24.]

Plaintiff raises various concerns about Dr. Brooks' testimony. First, Plaintiff argues that Dr. Brooks improperly insisted that cognitive functioning on mental status examinations was the only valid marker to interpret potential limitations to all areas of functioning. [Filing No. 12, at ECF p. 19.] The Commissioner did not address the specific arguments Plaintiff raised in relation to Dr. Brooks, but rather simply reiterated the ALJ's findings regarding Dr. Brooks' opinion and stated reasons for finding it persuasive. [Filing No. 13, at ECF p. 9.][1] However, review of the hearing transcript indicates that Dr. Brooks did not testify that the only valid marker would be objective evidence of cognitive functioning impairments. [Filing No. 9-2, at ECF p. 47.] Rather, he acknowledged that there are levels to conflict with others, but that in this particular case, his opinion was influenced by the fact that there was no objective evidence of personality disorders

---

[1] Plaintiff also did not make any note of the Commissioner's failure to address many of the specific arguments related to Dr. Brooks in his reply brief, which partly reduces the Court's concern about the lack of a thorough discussion on these noted issues. [Filing No. 19.]

or difficulties interacting with others and that, at most, he believed the records indicated moderate limitations, not marked.  [Filing No. 9-2, at ECF p. 49.][2]

Plaintiff also disagrees with the ALJ's rejection of the opinion of impartial medical expert Dr. Lee Fischer, who also testified at the supplemental hearing.  Plaintiff argues that the ALJ rejected Dr. Fischer's opinion that there were no physical medically determinable impairments, though the ALJ did find a severe impairment of obesity.  Plaintiff takes issue with the ALJ's lack of proposed hypotheticals to account for the impact of obesity and the fact that none of the RFC elements appear to be connected to obesity.  [Filing No. 12, at ECF p. 21.]  Unfortunately, Plaintiff fails to develop this argument by suggesting any work limits that were left out.  Furthermore, at the hearing, Plaintiff's counsel agreed that there were no physical impairments.  [Filing No. 9-2, at ECF p. 39 ("ATTY: No, Your Honor.  I agree that there are no physical impairments.").]  Thus, at most, any deficiency related to Dr. Fischer's testimony is harmless error.  *See, e.g., Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (recognizing remand from harmless error is a "waste of time" where the error would not change the outcome of the ALJ's decision).

The ALJ considered Plaintiff's impairments, symptoms, treatment records, and opinion evidence in formulating her RFC, and specifically considered Plaintiff's mental impairments while analyzing the paragraph B criteria of the four broad functional areas of mental functioning.  [Filing No. 9-2, at ECF p. 19.]  Ultimately, the ALJ, like Dr. Brooks, found that Plaintiff had

---

[2] Plaintiff also takes issue with Dr. Brooks' assumptions related to use of illicit substances.  [Filing No. 12, at ECF p. 20.]  Once again, the Commissioner does not address this portion of Plaintiff's argument, but Plaintiff does not mention the lack of acknowledgement by the Commissioner at any point in his reply.  [Filing No. 19.]  The ALJ makes no mention of substance use in the decision, and it does not appear that Dr. Brooks inaccurately described Plaintiff's history.  Thus, this argument does not warrant further discussion or review.

moderate limitations in all four areas. [Filing No. 9-2, at ECF p. 19.] The ALJ acknowledged Plaintiff's reports that his conditions affect his ability to concentrate, complete tasks, understand, and follow instructions. In addition, the ALJ noted Plaintiff's reported difficulty with handling stress and changes in routine. However, the ALJ pointed to treatment records noting that Plaintiff was not consistently observed to have significantly debilitating memory, understanding, interaction, concentration, or hygiene problems at medical appointments. [Filing No. 9-2, at ECF p. 20.] The ALJ further noted that Plaintiff's mental status exams were generally largely negative, although there were some positive findings, such as depressed affect and disheveled appearance, at some appointments. Finally, the ALJ noted that at the hearing, Plaintiff managed to provide information about his personal and medical histories, answered questions appropriately without any significant problems, did not engage in any significant unusual behaviors or inappropriate interactions, was polite when addressing the ALJ, and maintained his concentration fairly well. [Filing No. 9-2, at ECF p. 20.][3]

     Plaintiff argues that it is "difficult to reconcile" the ALJ's perspective—that the record contained largely negative findings—with a record containing repeated suicide attempts, reported daily anger episodes, an arrest for assaulting a police officer, and clinical examination findings with abnormalities in grooming, speech, thought content, mood, and affect. [Filing No. 12, at ECF p. 15.] The ALJ specifically addressed Plaintiff's hospitalization in May 2018 for suicidal ideations and self-harm behavior. The ALJ noted that Plaintiff had been off his

---

[3] Plaintiff's counsel takes issue, in part, with the ALJ's description of Plaintiff at the hearing. Plaintiff notes that on two separate occasions during the hearing, the ALJ reprimanded Plaintiff for cursing. In addition, Plaintiff attempted to interrupt questioning, got confused with a question, and rambled. [Filing No. 12, at ECF p. 19.] While the hearing transcript appears to corroborate Plaintiff's description, the ALJ's decision is not necessarily in contention with the facts. The ALJ did not say that Plaintiff's behavior was not unusual, but that it was not *significantly* unusual. Regardless, this potential factual discrepancy is not a deciding issue in this case.

medications for a week and that his condition improved such that by the time of discharge, mental status exam findings were largely negative. [Filing No. 9-2, at ECF p. 23.] While the ALJ made no direct mention of the evidence that Plaintiff cites from the record related to reports of anger episodes or an arrest, the ALJ did address clinical examination findings by stating that the records did not show Plaintiff was consistently observed to have significantly debilitating memory, understanding, interaction, concentration, or hygiene problems at medical appointments. [Filing No. 9-2, at ECF p. 20.]

      The Seventh Circuit has "often held that an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (internal citation and quotation marks omitted). Rather, the ALJ must confront evidence that does not support her conclusion and explain why it was rejected. *Id.* Thus, in this case, while the ALJ did not specifically address every piece of evidence in the record, she did confront the majority of the evidence, including that which could have weighed in favor of a finding of disability. Furthermore, as it relates to the state agency consultant opinions, the ALJ did not ignore evidence; she just weighed it differently than Plaintiff feels it ought to have been weighed. The ALJ assessed all relevant evidence, and found the totality of evidence in the record did not support a need for additional limitations. The Court declines Plaintiff's invitation to reweigh the evidence, which is not the Court's role. *See, e.g., Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) ("The court's role is not to reweigh evidence, but to determine whether the ALJ built an accurate and logical bridge between the evidence and the conclusion.") (Internal citation and quotation marks omitted)). *See also Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020) ("[E]ven if reasonable minds could differ on the ALJ's rejection of Zoch's testimony, we will not reweigh evidence or substitute our judgment for the ALJ's.").

In fact, the ALJ indicated that the overall record supported additional limitations and thus found Plaintiff more limited than state psychological consultants Dr. Germain and Dr. Chappuis. That the ALJ assessed more mental limits that the state agency consultants underscores the reasonableness of this portion of the ALJ's decision. *See, e.g., Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("This [RFC] finding was more limiting than that of any state agency doctor or psychologist, illustrating reasoned consideration given to the evidence Burmester presented."). Plaintiff argues that the ALJ's assessed RFC "is long-winded but largely repetitious and boils down to unskilled work (simple, routine, repetitive tasks learned in 30 days or less) with no teamwork, occasional interactions with others, and no fast-paced work." [Filing No. 12, at ECF p. 17.] The ALJ's analysis and resulting RFC reflect proper consideration of the record.

Regarding concentration, Plaintiff argues that the ALJ did not fully account for the checkbox findings related to concentration that were reflected in the consultants' opinions. In addition, Plaintiff argues that the ALJ failed to address a reported "marked" checkbox limitation to carrying out detailed instructions noted in both consultants' reports. [Filing No. 12, at ECF p. 19.] However, the consultants ultimately found Plaintiff had, as a whole, no more than moderate limitations in relation to concentration, persistence, and pace. [Filing No. 9-3, at ECF p. 22.] Moreover, Plaintiff failed to sufficiently clarify what other restrictions or limitations the record established that the ALJ did not address in her decision. *See, e.g., Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kind of work restrictions might address Jozefyk's limitations in concentration, persistence, or pace because he hypothesizes none."). Despite moderate ratings in some areas of concentration deficits, the state agency psychologists found Plaintiff could understand, remember, and carry out simple instructions, make simple decisions, concentrate for extended periods, interact with others, and respond to change. [Filing No. 9-3, at

ECF p. 9-10, 21-22.] Thus, moderate limitations were encompassed in the narrative portion of the report, and the ALJ was not required to separately discuss or weigh the "checkbox" limitations.

Plaintiff argues that a limitation to unskilled work with the ability to "concentrate for extended periods" does not offer any guidance as to how the moderate checkbox limitations to concentration should be applied, citing *DeCamp v. Berryhill*, 916 F.3d 671 (7th Cir. 2019). In *DeCamp*, a state agency psychologist found moderate limitations to concentration and concluded that the claimant "may have some difficulty with concentration and persistence at times but she is able to meet the demands of basic unskilled work." *Id*. at 673. The ALJ limited DeCamp to "unskilled work" with no fast-paced production line or tandem tasks. *Id*. at 675. The Court concluded that while the ALJ may rely on a narrative explanation, "the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections[.]" *Id*. at 676. Plaintiff argues that in the present case, "the ALJ could have relied on the narrative, but 'extended periods' is a vague concept at best and does not clearly communicate what was intended by moderate concentration limitations." [Filing No. 19, at ECF p. 3.] However, once again Plaintiff's argument does not articulate what the ALJ supposedly failed to address in the resulting RFC. The ALJ concluded that Plaintiff could perform a full range of work at all exertional levels, but with a long list of non-exertional limitations intended to address all of the limitations supported by the record. Thus, the present situation is not synonymous to *DeCamp*.

Plaintiff also contends that the ALJ ignored "checkbox" limitations in assessing Plaintiff's *social* limitations. [Filing No. 12, at ECF p. 18.] However, Plaintiff's argument is confusing and does not clearly indicate what specific limitations the ALJ allegedly ignored. State agency

10

consultants Dr. Germain and Dr. Chappuis indicated that Plaintiff did not have social limits in that portion of the report. [Filing No. 9-3, at ECF p. 9, 22.] The consultants also opined that Plaintiff was able to interact with others in the mental RFC explanation. [Filing No. 9-3, at ECF p. 10, 24.] Nevertheless, the ALJ reasonably assessed some work limits related to interacting with others based on examination findings and other evidence in the record. [Filing No. 9-2, at ECF p. 22.][4]

### B. Occasional, superficial interaction with public, coworkers, and supervisors

Plaintiff's argument related to the ALJ limiting him to occasional, superficial interactions raises a closer question. As Plaintiff notes in his opening brief, although no medical source opinion required as much, the ALJ limited Plaintiff to "[o]ccasional, superficial interaction with the general public, coworkers, and supervisors." [Filing No. 9-2, at ECF p. 22.] Dr. Brooks only limited Plaintiff to occasional interaction with supervisors, coworkers, and the general public— with no mention of a limitation to superficial interactions. [Filing No. 9-2, at ECF p. 44.] The other consultants found Plaintiff had only mild limitations to interacting with others and responded "no" to the question of whether Plaintiff had social interaction limitations. [Filing No. 9-3, at ECF p. 7, 9, 19, 22.]

The ALJ's decision references the vocational expert testifying that he interpreted "superficial" as "no dependency on having to interact with others to do the job." [Filing No. 9-2, at ECF p. 25.] "Courts within this Circuit have observed that superficial contact refers to the quality of the contact rather than the quantity of the contact." *Brenton S. v. Kijakazi*, No. 4:21-

---

[4] The Commissioner claims that Plaintiff misses a significant point: neither state agency psychologist opined that Plaintiff was disabled. [Filing No. 13, at ECF p. 14.] This contention is flawed. As Plaintiff emphasizes in his reply brief, it is not the role of state agency medical consultants to say whether a claimant is disabled; that is the role of the ALJ. *See* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

cv-00097-JMS-DML, 2022 WL 620604, at *4 (S.D. Ind. Mar. 3, 2022) (internal citation and quotation marks omitted). Plaintiff argues that the ALJ erred in relying on the vocational expert's interpretation of "superficial" when limiting Plaintiff to occasional, superficial interaction with the general public, coworkers, and supervisors. [Filing No. 12, at ECF p. 21-24.] Plaintiff labels the VE's interpretation of superficial as "deeply problematic" and references unresolved tensions in the testimony between the ALJ and the VE. [Filing No. 12, at ECF p. 22.]

  The Court agrees that perusing the hearing transcript reveals confusion over the definition and whether an individual in such situation could actually perform the work discussed. However, review of the transcript also reveals a clear attempt by the VE to clarify his statements. When asked how someone who required "no dependency on interacting with others" could also tolerate normal supervisory actions and instructions as needed, the VE attempted to alter the hypothetical, stating that he resolved the contradiction by deciding that if the ALJ "wanted to ask if they could not tolerate supervision, then they would ask that." [Filing No. 9-2, at ECF p. 79.] The VE further clarified that the way he understood superficial contact with others is with the public and coworkers, but "obviously" an individual would have some supervision in any role. The VE also later conceded that there would have to be at least some instruction and supervision with the first 30 days of a job, and that if someone could not tolerate this, then they could not handle competitive employment. [Filing No. 9-2, at ECF p. 81-83.]

  The ALJ ultimately limited Plaintiff to occasional, superficial interaction with the general public, coworkers, *and supervisors*. [Filing No. 9-2, at ECF p. 22.] With this addition, Plaintiff argues that the ALJ's RFC finding conflicts with the VE's testimony. The Commissioner's brief is not particularly helpful, as it glosses over many of the concerns Plaintiff raised. However, the ALJ's step five finding is supported by the VE's testimony, despite the confusing testimony and

valid points raised by Plaintiff on appeal. The ALJ posed several hypotheticals to the VE which included all limitations that the record supported. In the end, the ALJ found Plaintiff capable of performing various jobs that exist in significant numbers in the national economy, including custodian, laborer, and dishwasher. [Filing No. 9-2, at ECF p. 25.]

Here, the ALJ's RFC finding is sufficiently detailed and articulates that Plaintiff would be able to do work with a short initial learning period of usually 30 days or less; no tandem tasks or teamwork; no fast-paced or assembly line production requirements; and occasional, superficial interaction with the general public, coworkers, and supervisors. [Filing No. 9-2, at ECF p. 22.] In addition, the ALJ found Plaintiff could tolerate normal supervisory interactions as needed, including performance appraisals, corrections, instructions, and directives as necessary. [Filing No. 9-2, at ECF p. 22.] The ALJ sufficiently addressed the VE's testimony and adapted the RFC in such a way that it was not work-preclusive. And, as Plaintiff concedes, none of the consultants suggested that Plaintiff required this additional limitation to occasional, superficial interaction or even stricter limits. Thus, the ALJ—and the VE—provided adequate interpretation and analysis. Remand is improper.

**IV.     Conclusion**

Because the ALJ's findings were supported by substantial evidence, Plaintiff's request for remand [Filing No. 12] is denied.

Date: 7/11/2022

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email